**PANKRATZ LUMBER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Nos. 84–7126, 85–7666.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 1986.

Decided Aug. 12, 1987.

---

Frank W. Frisk, Jr., Washington, D.C., and John P. Braislyn, Seattle, Wash., for petitioner.

John N. Estes, III, Washington, D.C., for respondent.

Before FLETCHER, FERGUSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Pankratz Lumber Company petitions this court for review of two decisions of the Federal Energy Regulatory Commission (FERC or the Commission) concerning Pankratz's application to build a hydroelectric power project. We agree with the Commission that Pankratz's application was patently deficient at the time it was filed and affirm its decisions.

## I. *Facts*

Through Title IV of the Public Utility Regulatory Policies Act of 1978 and subsequent amendments, Congress provided for the establishment of a program to encourage the development of small hydroelectric power projects that use existing dams. 16 U.S.C. §§ 2701–2708 (1982). FERC regulates the issuance of licenses to construct and operate hydroelectric projects. *Id.* §§ 797(e), 817. Congress has required the Commission to expedite licensing procedures for small hydro projects, *id.* § 2705(a), and expressly granted FERC discretion to exempt certain projects from its licensing requirements. *Id.* § 2705(d).

There was some interest in developing a small hydroelectric power project along a stretch of Boulder Creek in the State of Washington. Early in 1983, FERC received an application for a license for such a project from the Cascade group and established pursuant to regulation a May 31, 1983, deadline for the receipt of competing license or exemption applications. 18 C.F.R. § 4.33(c) (1984).[1] FERC accepted for filing the Cascade group's license application on March 29, 1983; two days later, in lieu of filing a license application, Pankratz filed an application for exemption.

In order for applicants to qualify for the benefit of expedited consideration through exemption from licensing, FERC requires that at the time the exemption application is filed applicants have either all the real property interests necessary for a project or an option to obtain those interests. 18 C.F.R. § 4.103(b)(2)(ii). At the time of Pankratz's application, the State of Washington owned one parcel of land necessary to Pankratz's proposed Boulder Creek project. Pankratz and state officials had already reached an agreement providing for the transfer of that parcel to Pankratz in exchange for other property.

Pankratz included in its exemption application a letter dated March 16, 1983, from the Washington Department of Natural Resources (the Department). The letter constituted a memorandum of agreement regarding the land exchange (the Memorandum of Agreement). Under Washington law, however, the agreement for the land exchange would not bind the state until after submission of a formal application to its Board of Natural Resources (the Board), a public hearing, and official Board approval. Wash.Rev.Code § 79.08.015 (1974). None of those events had occurred at the time of Pankratz's filing; none had occurred by the May 31 deadline for filing applications for the Boulder Creek project.

On August 1, Pankratz filed a letter with FERC stating that the land exchange was complete, but did not include any evidence of property ownership. The Commission issued a notice to the public of the filing of Pankratz's application on August 10; this notice was not a notification to Pankratz of acceptance of its application for filing. *See* 18 C.F.R. § 4.31(c)(2), (1). On September 1, FERC issued a notice rescinding its prior public notice of application, which it said it had issued "inadvertently." Pankratz filed a supplement to its application on September 19, which included a copy of a deed for the state land, dated August 8.

On October 6, FERC rejected Pankratz's application, finding it patently deficient because the Memorandum of Agreement between Pankratz and the Department did not constitute an option for Pankratz to purchase the property. *Pankratz Lumber Co.,* 25 F.E.R.C. ¶ 61,031 (1983). The Commission denied rehearing, 25 F.E.R.C. ¶ 61,437 (1983), and Pankratz filed a timely petition for review (No. 84–7126) pursuant to 16 U.S.C. § 825*l* (b).

In 1985, we granted Pankratz's request for remand of its petition in light of *Tulalip Tribes of Washington v. FERC,* 732 F.2d 1451 (9th Cir.1984), in which we found that FERC's exemption authority did not extend to the type of project involved here. The Commission subsequently held that while it no longer had the authority to grant these exemptions, it would permit parties whose exemption applications had been accepted for filing at the time *Tulalip*

---

1. The relevant regulations in 18 C.F.R. have since been reorganized; references are to the pre-reorganization sections, which were in effect at the time of Pankratz's application.

was decided to convert them to license applications. *Snowbird, Ltd.*, 28 F.E.R.C. ¶ 61,062 (1984), *reh'g denied sub nom. Eagle Power Co.*, 30 F.E.R.C. ¶ 61,254 (1985). However, exemption applications that had not been accepted for filing were not afforded such equitable relief. On remand of Pankratz's petition, FERC found that its exemption application had not been accepted for filing at the time of *Tulalip* and therefore was not eligible for conversion to a license application. *Pankratz Lumber Co.*, 31 F.E.R.C. ¶ 61,076 (1985). Following the Commission's denial of rehearing, 32 F.E.R.C. ¶ 61,462 (1985), Pankratz filed a second timely petition for review (No. 85–7666) which we consolidated with its previously stayed petition.

## II. *Legal Discussion*

■ Because Congress has empowered FERC to promulgate regulations governing the issuance of exemptions from licensing of certain small hydroelectric power projects, courts afford it broad discretion in determining its own procedures. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *Pacific Gas & Elec. Co. v. FERC*, 746 F.2d 1383, 1386 (9th Cir.1984). We defer to FERC's interpretation of its own regulation unless plainly erroneous. 746 F.2d at 1386. Further, the Commission's findings of fact, if supported by substantial evidence, are conclusive. 16 U.S.C. § 825*l*. Finally, where FERC is empowered to exercise its discretion, i.e., here, to waive filing requirements, courts will not review that exercise of discretion except upon a showing of substantial prejudice, *The Steamboaters v. FERC*, 759 F.2d 1382, 1390–91 (9th Cir.1985), and will not overturn those decisions unless they are arbitrary, capricious or constitute an abuse of discretion. *Pacific Gas & Elec. Co. v. FERC*, 746 F.2d at 1387.

### A. *FERC's Rejection of Pankratz's Exemption Application*

■ Pankratz appeals the rejection by FERC of its exemption application, asserting that FERC erred in its finding that the application did not demonstrate the necessary real property interests in land to qualify for an exemption from licensing. Pankratz claims that it did possess the necessary interests, and that in any case FERC acted contrary to precedent and failed to provide Pankratz an opportunity to amend its application. We disagree.

Congress authorized FERC under 16 U.S.C. § 2705(d) to grant exemptions from the licensing requirements applicable to certain small hydroelectric power projects in order to encourage and expedite their development.[2] *Phoenix Hydro Corp. v. FERC*, 775 F.2d 1187, 1190 (D.C.Cir.1985). However, one important distinction between exemption holders and licensees is that only licensees have the power of eminent domain under 16 U.S.C. § 814. Consonant with Congress' intent and in light of this distinction, FERC promulgated regulations specifying qualifications for applicants seeking an exemption from licensing. In particular, the regulations required that an exemption applicant have either all the real property interests in lands necessary to its proposal or an option to obtain those interests. 18 C.F.R. § 4.103(b)(2)(ii). Furthermore, an applicant was required to submit documentary evidence of its status as owner or optionee of those interests. *Id.* § 4.107(a); *Phoenix Hydro*, 775 F.2d at 1190.

The relationship between FERC's property interest requirements and Congress' goal of facilitating the rapid development of small hydro projects is evident: Congress intended exemption applicants to be in the position to begin immediate construction on a project; applicants who do not control the land rights needed for a project at the time of application are not able to do so. Thus, we find that FERC's regulations requiring that an exemption applicant dem-

---

**2.** Our holding in *Tulalip*, that the scope of FERC's exemption authority under 16 U.S.C. § 2705(d) does not encompass the type of project involved here, is not pertinent to this part of our analysis.

onstrate by documentary evidence that it possesses the necessary real property interests for a project are well within the Commission's statutory authority.

Pankratz admits that it did not own all the necessary real property interests at the time of filing its exemption application or at the time of the filing deadline. It claims, however, that the Memorandum of Agreement from the Department of Natural Resources afforded it an option to purchase the property. In its order rejecting Pankratz's application, FERC found that the Memorandum was not an option within the meaning of the regulation, "for the exercise of an option must be within the control of the applicant, and not dependent upon the subsequent approval of anyone else." *Pankratz Lumber Co.*, 25 F.E.R.C. ¶ 61,031 at 61,141 (citing *Power Auth. of State of N.Y. (PASNY)*, 23 F.E.R.C. ¶ 61,-429 (1983)).

FERC's assessment of the legal significance of the Memorandum of Agreement is accurate: The Memorandum was not a conveyance by the State of Washington of any property interest to Pankratz. The Department was not capable under Washington law of conveying the property without first obtaining the approval of the Board of Natural Resources. Even if viewed as a promise to convey on the part of the Department, the Memorandum was still subject to submission to the Board, a public hearing, and Board approval. These conditions, which were not within the discretion of either Pankratz or the Department, preclude any finding that the Memorandum was an unconditional grant of a property interest exercisable at the option of Pankratz.

*Phoenix Hydro*, 775 F.2d at 1187, is directly on point. In that case, an exemption applicant claimed it met the property interest requirement because it had arranged to purchase the property at issue from a state agency. While a final price for the property had not been negotiated and the agency was not legally obligated to convey it, the agency had given oral assurances of its policy to convey interests in such situations. Nevertheless, "[t]he Commission's finding that this inchoate and unenforceable promise to convey ... did not rise to a property interest necessary for the exemption was well within the exercise of its discretion." *Phoenix Hydro*, 775 F.2d at 1191. *See also PASNY*, 23 F.E.R.C. ¶ 61,-429 (no option to buy state property exists if subject to consent of state agency).

Pankratz attempts to distinguish *Phoenix Hydro* by pointing out that it did not involve a written agreement but only an oral statement of assurance. While Pankratz is correct in its description of the facts, the critical point is that neither the state agency's oral assurance to Phoenix Hydro nor the Department's Memorandum of Agreement to Pankratz conveyed any property rights, and therefore neither can be considered a grant of an option to purchase. Pankratz asserts that Department memoranda of agreement are binding in nature, inasmuch as the Department will not sell or encumber affected property and has notations to that effect entered on the deeds. However, these policies do not convey property rights to Pankratz and are in any case alterable at the discretion of the Department. Pankratz also asserts that Board approval was a virtual certainty; however, even if it was, that fact could not transform a letter from a party lacking the power to authorize a conveyance into an enforceable agreement to convey.

Pankratz's other attempts to negate this basic conclusion are not persuasive. Pankratz points out that it obtained a deed to the property dated August 8, 1983, two days prior to the Commission's erroneously issued public notice of the acceptance for filing of Pankratz's application. While true, this fact is of no consequence: Pankratz did not have the necessary property interest at the time of filing or at the filing deadline and thus was ineligible to apply for an exemption. 18 C.F.R. § 4.103(b)(2)(ii).

Pankratz next claims that FERC's orders are inconsistent with its own precedent, citing *Central Vermont Public Service Corp.*, 25 F.E.R.C. ¶ 61,183 (1983). This decision is readily distinguished. There, the Commission accepted an application in-

volving an option to purchase public property that had not been executed at the time the exemption application was filed. The critical difference there was the fact that Central Vermont faced no competition for its project. Without competing applications, there was no deadline for filing, and FERC was able to accept the application as of the date the executed option was submitted to it. In accepting the application as of the later date and not the application date, FERC noted that "[c]onsistency and equity require that we strictly enforce this important [necessary property interest] requirement, and not waive it even under the circumstances presented here." *Id.* at 61,-498.

Pankratz, however, did have competition for the Boulder Creek project. By regulation, the filing of the Cascade group's application established a deadline—May 31, 1983—before which Pankratz had to file an adequate application. *See* 18 C.F.R. § 4.33(c). Its amended filing, which demonstrated that Pankratz had all the necessary property interests, was submitted September 29, 1983, too late for consideration.

■ Pankratz further claims that FERC should have given it notice and time to cure any deficiencies in its application pursuant to 18 C.F.R. § 4.31(d)(1). This regulation does not apply here. FERC regulations distinguish between deficient and patently deficient applications. *Id.* § 4.31(d)(1), (2). An application that does not permit FERC to determine whether the applicant possesses the necessary property interests is deficient. For example, an application that avers ownership of land without documenting that ownership would be deficient. However, an application that reveals on its face that the applicant does not possess the requisite property interests is patently deficient. *Lawrence J. McMurtrey,* 20 F.E.

R.C. ¶ 61,359 (1982). Because the Memorandum of Agreement clearly showed that Pankratz neither owned nor had an option to acquire the land necessary for the project, the application was patently deficient. The notice and time to cure provisions do not apply to patently deficient applications. *Id.*[3]

Pankratz's remaining arguments regarding the rejection of its application and FERC's first denial of its petition for rehearing are meritless. The Commission need not provide a reasoned decision for rescinding a mere public notice of filing of an application. And FERC was well within its discretion in deciding that Pankratz had not demonstrated sufficient cause for waiving the unmet application requirement.

**B.** *FERC's Refusal to Afford Pankratz Equitable Relief in Light of Tulalip.*

■ Upon our remand of Pankratz's petition for review in light of *Tulalip Tribes of Washington v. FERC,* 732 F.2d 1451 (9th Cir.1984), Pankratz requested that the Commission grant equitable relief to permit it to convert its exemption application to a license application. While FERC has granted such relief to other applicants, those applicants were in a distinctly different position than Pankratz.

In *Tulalip,* we held that FERC had improperly defined "dam" as used in 16 U.S.C. § 2708(b) and thereby had exceeded its statutory authority by granting exemptions to small hydro projects that required the construction of new dams or impoundments. 732 F.2d at 1454–55. Applying the principles enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), for determining whether to apply *Tulalip* retroactively,

---

**3.** Pankratz also cites *Minnesota Department of Natural Resources,* 31 F.E.R.C. ¶ 61,223 (1985). The case is clearly distinguishable. In *Minnesota DNR,* after FERC had granted the exemption, the exemption holder discovered—by means of a subsequent boundary survey—that a title discrepancy existed with respect to part of the necessary land. FERC then granted the successful applicant time to secure the necessary property rights. Although *Minnesota DNR* addressed

the additional time question, it arose in relation to a party in an entirely different legal position than Pankratz, and raised different legal issues which the Commission was free to treat differently. Moreover, even had the same legal issues been present, Minnesota DNR's application, unlike Pankratz's, was not patently deficient; therefore FERC could properly have granted it additional time under 18 C.F.R. 4.31(d)(1).

FERC held that our decision did not invalidate the unauthorized exemptions granted for projects that were already in operation or under construction. *Forward Power & Energy Co.*, 28 F.E.R.C. ¶ 61,063 (1984); *Eagle Power Co.*, 28 F.E.R.C. ¶ 61,061 (1984), *reh'g denied*, 30 F.E.R.C. ¶ 61,254 (1985). All other affected exemption applications, granted or not, were void under *Tulalip*. *Eagle Power*, 28 F.E.R.C. at 61,-115–16; *Snowbird, Ltd.*, 28 F.E.R.C. ¶ 61,-062 at 61,119 (1984), *reh'd denied sub nom. Eagle Power Co.*, 30 F.E.R.C. ¶ 61,-254 (1985). However, the Commission then granted equitable relief to parties whose exemption applications had been accepted for filing prior to *Tulalip*, permitting them to convert their now void exemption applications to license applications. *Eagle Power*, 28 F.E.R.C. at 61,116; *Snowbird*, 28 F.E.R.C. at 61,120. Applications that had not been accepted for filing at the time of *Tulalip* were dismissed. *Snowbird*, 28 F.E.R.C. at 61,119. The Commission did not act unreasonably in drawing the line where it did.

Pankratz's application was not accepted at the time of our decision in *Tulalip*. In fact, its application was not even pending at that time, since it had been properly rejected during the preceding year. Thus, FERC's refusal to grant equitable relief to Pankratz was not inconsistent with its prior decisions and did not constitute an abuse of discretion.

### III. *Conclusion*

The Commission's findings that the Memorandum of Agreement was not an option conveying property rights to Pankratz and that Pankratz's exemption application failed to satisfy the property interest requirement of 18 C.F.R. § 4.103(b)(2)(ii) are supported by substantial evidence. FERC's rejection of the exemption application and its refusal to provide equitable relief to Pankratz in light of *Tulalip* are neither arbitrary nor capricious and did not constitute an abuse of discretion.

AFFIRMED.