The SKOKOMISH INDIAN
TRIBE, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

City of Tacoma, Respondent–Intervenor.

No. 95–70884.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1997.

Decided Aug. 5, 1997.

**1304**

Mason D. Morisset, Morisset, Schlosser, Ayer & Jozwiak, Seattle, WA, for Petitioner.

Samuel Soopper, Federal Energy Regulation Commission, Washington, DC, for Respondent.

Before: WRIGHT, WALLACE, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

The Skokomish Indian Tribe ("the Tribe") appeals a decision of the Federal Energy Regulatory Commission ("FERC") denying the Tribe's application for a preliminary permit to develop a hydropower facility on the North Fork of the Skokomish River in Mason County, Washington. FERC determined that the Tribe's proposal conflicted with the City of Tacoma's ("Tacoma")[1] relicense application and denied the Tribe's permit application on that basis. On rehearing, FERC affirmed the denial. Because the Tribe is an aggrieved party under the Federal Power Act ("FPA"), we have jurisdiction to hear this appeal, and we affirm.

## I. BACKGROUND

### A. *The Permit Process*

Because the planning, construction, and operation of hydroelectric projects are costly and complex, Section 4(f) of the FPA authorizes FERC to issue preliminary permits prior to the licensing stage to enable prospective license applicants to obtain necessary financial commitments and to gather data for inclusion in later license applications. 16 U.S.C. § 797(f). The permit process is designed to induce parties otherwise unwilling to expend the necessary resources to prepare and file license applications. *See, e.g., Malta Irr. Dist. v. F.E.R.C.*, 955 F.2d 59, 60–61 (D.C.Cir.1992). A permit holder maintains priority for a license against all potential rivals for the term of the permit (not to exceed three years), and the permit holder is expected to conduct general preparations (surveys, financial arrangements, etc.) for the proposed project. 16 U.S.C. § 798. At the licensing stage, while FERC accepts and evaluates proposals submitted by all interested parties, the permit holder is accorded preference for the award of the license and receives the license so long as its plans are equally well-adapted to the development of the relevant water resources as the plans of the competing applicants. *Id.* at §§ 798, 800.

### B. *The Tacoma Relicensing Proceeding*

The Federal Power Commission first issued Tacoma a 50-year license in 1924 for a minor part of the complete power project designated the Cushman Hydroelectric Project No. 460 ("the Cushman project"). In 1974, Tacoma filed a new application for a major project license encompassing all of the project works, and it filed a revised application in late 1976. *City of Tacoma, Washington,* 67 F.E.R.C. ¶ 61,152 (May 4, 1994), 1994 WL 170164, *reh'g denied, City of Tacoma, Washington,* 71 F.E.R.C. ¶ 61,381 (June 22, 1995), 1995 WL 369570.

In 1984, FERC issued an environmental assessment ("EA") concluding that the new license would not significantly affect the human environment. In May 1990, however, parties to the relicensing proceeding filed a motion with FERC asserting that an environmental impact statement ("EIS") for the project was necessary, and FERC eventually issued a draft EIS in December 1995.

Meanwhile, in February 1992, the Tribe, which had participated in the Tacoma relicensing proceeding, filed a petition with FERC requesting that it declare Tacoma's present application to be for an "original license," rather than a relicense, and seeking that the project's environmental evaluation be based on the condition of the resources in the area prior to its construction.[2] FERC,

---

**1.** Tacoma appears in this case as an intervenor and has filed a brief in support of respondent FERC.

**2.** The Tribe contends that the Cushman Dam No. 2 has never been licensed properly because the original minor part license issued in 1924 authorized only the flooding of 8.8 acres of federal

however, held that Tacoma's application was in fact a relicensing proceeding under the FPA and that basing environmental review on pre-construction conditions was not required. *Id.*

## C. *The Tribe's Application for a Preliminary Permit*

The Tribe filed an application in February 1995 for a preliminary permit to study the development of a power project to be located at the toe of the existing Cushman Hydroelectric Project Dam No. 2 ("Cushman Dam No. 2") with the intake to be located in the forebay of the existing dam.[3] Although the application acknowledges that Cushman Dam No. 2 is used solely to divert water from the North Fork Skokomish River to Tacoma's Powerhouse No. 2, it states that ongoing FERC licensing proceedings are expected to result in requirements to eliminate or substantially reduce out-of-basin diversions and restore North Fork stream flows at Cushman Dam No. 2. The Tribe's concerns are that the lack of water flowing down the North Fork River has had devastating effects on fisheries and on the health of the river itself; it wants to ensure that any future development of the river, including usage of the small amount of water now coming down the river and any amounts that might be added after the relicensing process, will be utilized in a manner consistent with its restoration.

Tacoma moved to intervene in the Tribe's permit proceedings, contending that the Tribe's application competes with its relicense proposal because the Tribe proposes to take water that Tacoma uses in its powerhouse and use the water in a new powerhouse at the base of the dam. Tacoma also noted that FERC staff is currently evaluating a similar alternative—reducing diversions to Tacoma's powerhouse and constructing a new generating facility at the dam's base. Even though Tacoma views this option as "infeasible," it nevertheless believes the issue

will be resolved in the context of the relicensing.

## D. *FERC's Orders Rejecting the Tribe's Permit Application*

On April 6, 1995, FERC issued an order rejecting the Tribe's request for a preliminary permit on the ground that the Tribe's application conflicted with Tacoma's filed "initial development application" in violation of 18 C.F.R. § 4.33(a)(2). Specifically, it stated:

> In its relicense application, Tacoma proposes to provide a minimum flow of 100 cubic feet per second (cfs) below Cushman Dam No. 2. The Tribe proposes to study development of a powerplant that would use flows of up to 1,500 cfs released from the dam, based on the assumption that [FERC] will ultimately require release of those flows as environmental mitigation in the Cushman relicensing proceeding.

*Skokomish Indian Tribe,* 71 F.E.R.C. ¶ 61,-023 (Apr. 6, 1995), 1995 WL 148316, at *2, *reh'g denied, Skokomish Indian Tribe,* 72 F.E.R.C. ¶ 61,268 (Sept. 20, 1995), 1995 WL 556539.

In its Rehearing Order, FERC affirmed its prior decision, noting that while Tacoma had originally proposed to continue substantially diverting the North Fork stream flow to its Powerhouse No. 2, "in response to resource agency comments and recommendations, Tacoma later amended its proposal to include a minimum flow of 100[cfs] below Cushman Dam No. 2, to be released through a small turbine and powerhouse." *Skokomish Indian Tribe,* 72 F.E.R.C. ¶ 61,268, 1995 WL 556539, at *2. Accordingly, FERC held that the Tribe's permit application conflicted with this amendment as well as with Tacoma's original proposal:

> The Tribe's argument overlooks the fact that its proposed project would use the *same water* that Tacoma proposes to continue using for power generation, at either its existing Cushman Powerhouse No. 2 or its proposed powerhouse at the base of

land, not the approximately 4,700 acres now covered by the Cushman project (including two dams and reservoirs, hydroelectric generating facilities, diversion works, and transmission lines).

3. Cushman Dam No. 2 is part of the greater Cushman project.

Cushman Dam No. 2. The water can be used by one project or the other, but under the applicants' proposals, it is physically impossible for both projects to exist. Thus, the two applications do in fact conflict.

*Id.* (emphasis added).

### E. *Tacoma's Motion to Dismiss the Appeal*

Tacoma moved to dismiss this appeal on the ground that the Tribe is not an aggrieved party within the meaning of 16 U.S.C. § 825*l*, the section of the Federal Power Act governing appeal of a FERC order to a federal circuit court. The Ninth Circuit Appellate Commissioner denied Tacoma's motion on the basis that out-of-circuit authority holds that grants and denials of preliminary permits are subject to review by a court of appeals. *See Malta,* 955 F.2d at 61. The Commissioner's order, however, directed the parties to address the jurisdictional issue in the remaining briefs.

## II. STANDARD OF REVIEW

■ We defer to FERC's interpretation of its own regulations unless plainly erroneous. *Pankratz Lumber Co. v. F.E.R.C.,* 824 F.2d 774, 777 (9th Cir.1987). FERC's findings of fact are conclusive if supported by substantial evidence. *Id.* An agency's interpretation of a statute, however, is a question of law that we review de novo. *Conlan v. United States Dep't of Labor,* 76 F.3d 271, 274 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996).

## III. ANALYSIS

### A. *Jurisdiction*

■ Tacoma, in its appellate brief in support of respondent FERC, continues to assert that the Tribe is not an aggrieved party within the meaning of 16 U.S.C. § 825*l* (b) and hence this appeal should be dismissed. Tacoma argues that the Tribe has suffered no harm from the denial of its permit application because it does not need a permit to study the feasibility of its proposed project or to file a timely license application. Moreover, Tacoma asserts that should there be

unutilized water capacity upon completion of the relicensing proceeding, the Tribe, like any other interested party, would be able to file a permit application at that time. According to Tacoma, the priority accorded a permit holder vis-a-vis its competitors would be of no advantage here because there is no reason to provide priority in order to encourage development of a preexisting project that is the subject of relicensing.

■ "It is well-established that orders granting preliminary permits are final and therefore reviewable." *National Wildlife Fed'n v. F.E.R.C.,* 801 F.2d 1505, 1506 n. 1 (9th Cir.1986). The argument for the reviewability of permit denials is even stronger, because by definition if a party is denied a permit, it fails to receive the benefits that such a permit would convey. *See City of Bedford v. F.E.R.C.,* 718 F.2d 1164, 1168 (D.C.Cir.1983) ("We ... regard the injury arising from wrongful denial of the [preliminary] permit as a separate injury whose extent is imponderable and therefore irreparable-which means that immediate review can be obtained."). If a grant of a permit is reviewable, then *a fortiori,* a denial should be. *See Malta,* 955 F.2d at 61 ("Grants and denials of preliminary permits are considered final [FERC] action reviewable by a court of appeals."). Accordingly, we adopt the District of Columbia Circuit's reasoning in *City of Bedford* and hold that the Tribe is an aggrieved party within the meaning of 16 U.S.C. § 825*l* (b).

### B. *FERC's Decision*

■ FERC rejected the Tribe's permit application on the ground that it conflicted with Tacoma's pending relicense application. We uphold FERC's interpretation of its regulations and its findings of fact.

FERC's regulations implementing its FPA authority state that "[FERC] will not accept an application for a preliminary permit for project works that ... would develop, conserve, and utilize, in whole or in part, the same water resources that would be developed, conserved, and utilized by a project for which an initial development application has been filed...." 18 C.F.R. § 4.33(a)(2)

(1996). An "initial development application" is defined as:

> any acceptable application for either a license or exemption from licensing for a proposed water power project that would develop, conserve, and utilize, in whole or in part, water resources for which no other acceptable application for a license or exemption from licensing has been submitted for filing and is pending before [FERC].

*Id.* § 4.30(b)(11)(i). FERC specifically has explained:

> [T]he reference in section 4.33(a)(2) to an "initial development application" does not restrict its scope to applications for an initial license as opposed to applications for a new license; rather, it distinguishes the first acceptable filing from subsequent acceptable filings, regardless of whether the filing is for an original license or for a new license.

*Alpine Hydroelectric Co.,* 58 F.E.R.C. ¶ 61,-127 (Feb. 7, 1992), 1992 WL 19800, at *2.

The regulations on their face require denial of the Tribe's preliminary permit application. Tacoma properly filed and FERC accepted its license application *prior to* the filing of the Tribe's permit application. Tacoma's relicense application now proposes to provide a minimum flow of 100 cfs below Cushman Dam No. 2 to be released through a power plant, and the Tribe proposes to study the development of a larger power plant that would use flows of up to 1,500 cfs, which it assumes will be required to be released from the dam. Because the Tribe's proposed project would use the same water that Tacoma proposes to continue to use, FERC correctly concluded that the Tribe's permit application conflicts with Tacoma's filed relicense application.

Nor are we persuaded by any of the Tribe's other arguments concerning the denial of its permit application. First, the Tribe contends that Tacoma's 1974 relicense application was illegal and hence cannot bar the Tribe's permit. But Tacoma's relicense application is not before us at this time.

Second, the Tribe's reliance on *Kamargo Corp. v. F.E.R.C.,* 852 F.2d 1392 (D.C.Cir. 1988), for the proposition that a preliminary permit application is not barred by the FPA even when a proposed project conflicts with an existing project, is misplaced. As FERC noted, that case involved applications for preliminary permits to develop *incremental capacity* at licensed projects approaching relicensing. The District of Columbia Circuit concluded that FERC relied on irrelevant statutory provisions to deny the permit applications and remanded the case for further consideration. Importantly, the case involved permits to develop "additional *unutilized* water resources at existing projects." *Id.* at 1395 (emphasis in original).

Here, by contrast, the flows at issue are not unutilized, but are being diverted by Tacoma to a power generating facility. As FERC found, "The Tribe's permit application seeks to develop not incremental but substitute capacity; generation from the Tribe's proposed project would replace, rather than add to, generation currently provided by the Cushman Project." *Skokomish Indian Tribe,* 72 F.E.R.C. ¶ 61,268, 1995 WL 556539, at *3. At issue in the relicensing proceeding is whether some of these flows should no longer be diverted for their current use, but should instead be discharged into the stream. Nevertheless, FERC stated:

> [T]he issue of whether and to what extent minimum flows are needed below Cushman Dam No. 2 is fundamental to the Cushman relicensing proceeding. Until that issue is resolved, it is not possible to know with any degree of certainty whether any unutilized capacity exists at the site, and in what amount. This makes it impracticable to attempt to condition a permit to study only the unutilized capacity, so as to avoid conflicting with the filed license application.

*Skokomish Indian Tribe,* 71 F.E.R.C. ¶ 61,-023, 1995 WL 148316, at *3.

The Tribe responds that 30 cfs of unutilized capacity exists now and Tacoma has not applied for a license to "harness" the water that will be required to be released down the river by the end of the relicensing proceeding, placing its case within the confines of *Kamargo.* This argument is related to a third claim by the Tribe that Tacoma never amended its relicense application to include a

100 cfs powerplant at Cushman Dam No. 2.[4] This claim is outside the scope of this appeal, and even if true, would not affect its outcome. Regardless of whether the Tribe's permit application is compared with Tacoma's relicense application as initially filed or as later amended, it would have been denied under the rationale of FERC's orders because it seeks to develop resources that Tacoma not only proposes to utilize in its amendment but also currently utilizes. *See Skokomish Indian Tribe,* 72 F.E.R.C. ¶ 61,-268, 1995 WL 556539, at \*2 & n. 4.

The Tribe claims, however, that even if its permit application conflicts with Tacoma's relicense application, FERC should "configure the preliminary permit application to 'avoid interference'" between the two. As support for this fourth argument, the Tribe cites *Cosumnes River Water and Power Auth.,* 39 F.E.R.C. ¶ 61,272 (June 5, 1987), 1987 WL 117085. There, the agency dismissed Cosumnes's first-filed permit application for, *inter alia,* failure to comply with technical requirements, thereby giving priority to a competing, later-filed license application. FERC held that Cosumnes's permit application should be reinstated because it could be configured so that there would be no interference with the other project. 1987 WL 117085, at \*2.

*Cosumnes* does not support the Tribe's position. Unlike *Cosumnes,* FERC found here that the Tribe's proposal specifically conflicts with Tacoma's relicense application. Moreover, FERC correctly observed that the permit application in *Cosumnes* had been filed first and hence was not rejected pursuant to § 4.33(a)(2) as conflicting with a "filed initial development application." *Skokomish Indian Tribe,* 71 F.E.R.C. ¶ 61,023, 1995 WL 148316, at \*2 n. 14.

A fifth claim raised by the Tribe is that FERC's dismissal of its permit application is inconsistent with the nature and purpose of preliminary permits, which is not only to award the permit holder priority in any later licensing proceeding, but also to allow a prospective license applicant sufficient time to determine if its proposed project is feasible. The Tribe cites *Mine Reclamation Corp., v. F.E.R.C.,* 30 F.3d 1519 (D.C.Cir.1994), for its argument that proposed projects are necessarily speculative at the permit stage and need not provide complete details, such as the specific source of water.

While the Tribe is correct that permit applications need not identify all details of a proposed project, it fails to note that *Mine Reclamation* did not involve a permit application that conflicted with a filed license application. FERC stated in its rehearing order: "If a license application has been accepted for filing, [FERC] will not accept a later-filed permit application that conflicts with the license application, regardless of the amount of detail provided in the permit application." *Skokomish Indian Tribe,* 72 F.E.R.C. ¶ 61,268, 1995 WL 556539, at \*3. Therefore, FERC's "rejection of the permit application was not based on its specificity or lack thereof." *Id.*

 Finally, the Tribe argues that by denying its permit application, FERC ignored its trust responsibility toward Indian tribes. This argument also fails. FERC is "subject to the United States' fiduciary responsibility towards Indian tribes, which, in essence, consists of acting in the interests of the tribes." *Minnesota Power & Light Co.,* 75 F.E.R.C. ¶ 61,131 (May 1, 1996), 1996 WL 211960, at \*4. Nevertheless, it exercises this responsibility in the context of the FPA. *City of Tacoma,* 71 F.E.R.C. ¶ 61,381, 1995 WL 369570, at \*9. Hence, FERC has previously rejected arguments that it must afford Indi-

---

4. Tacoma's amendment to its relicense proposal first appeared in its July 29, 1991 response to FERC's request for additional information. Tacoma treated this amendment as part of its relicensing proposal in subsequent filings, as did FERC.

FERC did not issue public notice of this amendment because it was not material. *See* 18 C.F.R. § 4.35(f) (defining material amendment). Moreover, § 4.35 does not apply to amendments

"made ... to satisfy requests of resource agencies or Indian tribes...." *Id.* § 4.35(e)(4).

These sections indicate that FERC contemplates amendments being made to applications in response to its concerns or those of resource agencies or tribes. Thus, FERC acted within its authority by treating Tacoma's proposal to include a 100 cfs powerplant at Cushman Dam No. 2 as an amendment to its application.

an tribes greater rights than they would otherwise have under the FPA and its implementing regulations. *See Covelo Indian Community v. F.E.R.C.*, 895 F.2d 581, 586 (9th Cir.1990) (upholding Commission's denial of tribe's late intervention petition). Here, the Tribe's permit application is barred by FERC's regulations, and the federal trust responsibility does not compel its acceptance.

The decision of FERC is AFFIRMED.